<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LEVAR COLLIER,<br><br>                Plaintiff,<br><br>   v.<br><br>WELLPATH MEDICAL SERVICES, *et al.*:<br><br>                Defendants. | Civil No. 22-4625 (BRM) (LDW)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is *pro se* plaintiff Levar Collier's ("Plaintiff") civil rights complaint ("Complaint"), filed pursuant to 42 U.S.C. § 1983. (ECF No. 1.) Based on his affidavit of indigence (ECF No. 1-1), the Court previously granted him leave to proceed *in forma pauperis* and ordered the Clerk of the Court to file the Complaint. (ECF No. 3.)

At this time, the Court must review the Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the Complaint is **DISMISSED** in its entirety.

**I.  BACKGROUND**

Plaintiff is a pre-trial detainee confined at Hudson County Correction Center ("HCCC") in Kearny, New Jersey. Plaintiff brings this civil rights action, pursuant to 42 U.S.C. § 1983, against

the following Defendants: (1) Wellpath Medical Services ("Wellpath"), (2) Oscar Aviles, (3) Thomas A. DeGise, and (4) John Does 1-10. (*See* ECF No. 1.)

Plaintiff submits that, on May 13, 2022, he was moved to the "E-4-N" unit where he observed other detainees "sneezing and coughing." (*Id.* at 6.) Plaintiff alleges other detainees complained to the nursing staff while medications were being handed out. (*Id.*) Plaintiff overheard other detainees complaining that their kiosk medical complaints were either replied to late or not at all. (*Id.* at 6-7.)

The week of May 22, 2022, Plaintiff began sneezing, coughing, and experiencing body aches and chills. (*Id.* at 7.) Plaintiff contends he "could [not] eat or do much of anything for about [three] days." (*Id.*) Plaintiff alleges he did not submit a medical claim on the kiosk because he knew of three detainees who did not have their medical claim answered. (*Id.*) Plaintiff did tell the nurse during "medication pass" that he was not feeling well and was told he "would be called down that day, but never was." (*Id.*)

On June 9, 2022, twelve inmates, including Plaintiff, tested positive for COVID-19. (*Id.*) On June 10, 2022, Plaintiff was placed in quarantine with three other COVID-19 positive individuals for "6-7 days." (*Id.*) While in quarantine, Plaintiff was let out for only thirty minutes and was not able to clean his cell or clothes. (*Id.*) Plaintiff alleges he was quarantined "as if [he] was punished for doing something wrong and treated as if [he] was a disease." (*Id.*) Plaintiff claims the Officers wore "no protective/P.P.E." except for a mask and were consistently "maskless," contributing to the spread of COVID-19. (*Id.*) Plaintiff was released from quarantine without having to test negative. (*Id.*)

The Complaint seeks monetary damages and injunctive relief. (*See id.*)

## II. LEGAL STANDARD

### A. Standard for a *Sua Sponte* Dismissal

Per the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 42 U.S.C. § 1997e. The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 42 U.S.C. § 1997e(c). This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. § 1915(e)(2)(B) and 1915A because Plaintiff is a prisoner who is proceeding as indigent.

According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive *sua sponte* screening for failure to state a claim, the complaint must allege "sufficient factual matter" to show the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 483 n.17 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). Moreover, while pro se pleadings are liberally construed, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

### B.  Section 1983 Actions

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Therefore, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, the alleged deprivation was committed or caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

### III.  DECISION

### A. Eighth Amendment Failure to Provide Medical Treatment

Plaintiff alleges he was sick with cold like symptoms of coughing, sneezing, body aches, and chills for three days and received no medical attention after telling the medication nurse.

 A pretrial detainee's claim of inadequate medical care arises under the Fourteenth Amendment, rather than the Eighth Amendment. *See Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003). Nevertheless, the United States Supreme Court has held that the Fourteenth Amendment affords pretrial detainees protections that are "at least as great" as those afforded to convicted prisoners under the Eighth Amendment. *See id.* (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)). Therefore, in the context of claims for inadequate medical care, the Third Circuit has "found no reason to apply a different standard than that set forth in *Estelle* [*v. Gamble*, 429 U.S. 97 (1976)] (pertaining to prisoners' claims of inadequate

medical care under the Eighth Amendment) when evaluating whether a claim for inadequate medical care by a pre-trial detainee is sufficient under the Fourteenth Amendment." *See id.*

The Eighth Amendment prohibits states from inflicting "cruel and unusual punishments" on those convicted of crimes. *Rhodes v. Chapman*, 452 U.S. 337, 344–46 (1981). This proscription against cruel and unusual punishment requires prison officials to provide inmates with adequate medical care. *Estelle*, 429 U.S. at 103–04. In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. *Id.* at 106.

To satisfy the first prong of the *Estelle* inquiry, the inmate must demonstrate his medical needs are serious. Serious medical needs include those that have been diagnosed by a physician as requiring treatment or are so obvious a lay person would recognize the necessity for a doctor's attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss. *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

The second element of the *Estelle* test requires an inmate to show prison officials acted with deliberate indifference to his serious medical need. "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 837–38 (1994). Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. *Andrews v. Camden Cnty.*, 95 F. Supp. 2d 217, 228 (D.N.J. 2000). Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . [which] remains a question of sound professional judgment.

5

Implicit in this deference to prison medical authorities is the assumption that such informed judgment has, in fact, been made." *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotations and citations omitted) (alteration in original). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. *Estelle*, 429 U.S. at 105–06; *White*, 897 F.2d at 110.

> Where prison authorities deny reasonable requests for medical treatment, however, and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,' deliberate indifference is manifest. Similarly, where 'knowledge of the need for medical care [is accompanied by the] . . . intentional refusal to provide that care,' the deliberate indifference standard has been met . . . . Finally, deliberate indifference is demonstrated '[w]hen . . . prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment.

*Monmouth Cnty. Corr. Inst. Inmates*, 834 F.2d at 346 (alterations in original) (citations omitted). "[I]f necessary medical treatment [i]s . . . delayed for non-medical reasons, a case of deliberate indifference has been made out." *Id.*

Affording Plaintiff all favorable inferences, the Complaint alleges Plaintiff was experiencing cold-like symptoms of coughing, sneezing, body aches, and chills for three days. Plaintiff's Complaint alleges relatively minor symptoms, and he therefore fails to demonstrate his medical needs were sufficiently "serious" for the purposes of establishing entitlement to relief under § 1983. *See Fletcher v. Sussex County*, No. 16-1908, 2019 WL 1379878, at *8-9 (D.N.J. March 26, 2019) (finding Plaintiff's symptoms of "a runny nose, sneezing, sore throat, and headaches" did not amount to a serious medical need); *Smith v. Montefiore Med Ctr.-Health Servs. Div.*, 22 F. Supp. 2d 275, 281 (S.D.N.Y. 1998) ("[P]laintiff went to the clinic with cold-like symptoms for which he was given cough syrup and eye solution. Hence, his immediate medical

6

needs were not sufficiently serious to invoke the protections of the Eighth Amendment."); *Schwartz v. Jones*, No. 99–3269, 2000 WL 1859012, at *3 (E.D. La. Dec. 18, 2000) (holding "flu-like symptoms" and head cold were not serious medical needs). Plaintiff's Fourteenth Amendment claim for failure to provide medical treatment is dismissed without prejudice for failure to state a claim upon which relief can be granted.

### B. Fourteenth Amendment Conditions of Confinement

Plaintiff alleges he was held in quarantine for six to seven days after he tested positive for COVID-19. Plaintiff argues he was quarantined as a punishment for testing positive for the virus. Plaintiff also alleges Officers were not wearing masks while he was in quarantine. The Court construes Plaintiff's allegations as raising a Fourteenth Amendment right to be free from cruel and unusual punishment claim.

In accordance with the Supreme Court's decision in *Bell v. Wolfish*, 441 U.S. 520, 549 (1979), officials may not punish detainees before a court convicts them. *Hubbard v. Taylor* (*Hubbard II*), 538 F.3d 229, 231 (3d Cir. 2008). To establish a constitutional violation under the Fourteenth Amendment, a pretrial detainee plaintiff would have to plausibly allege that the challenged conditions of confinement amount to "punishment." *See Bell*, 441 U.S. at 538 ("In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee."); *see also Bistrian v. Levi*, 696 F.3d 352, 373 (3d Cir. 2012) ("Given pretrial detainees' federally protected liberty interests . . . under the Due Process Clause . . . a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law.").

"[T]he ultimate question" is whether conditions are "reasonably related to a legitimate governmental objective." *Hubbard II*, 538 F.3d at 236 (quoting *Bell*, 441 U.S. at 549). The Third Circuit instructs courts to consider the totality of the circumstances of confinement, including any genuine privations over an extended period of time, and whether conditions are (1) rationally related to their legitimate purpose or (2) excessive in relation to that purpose. *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 326 (3d Cir. 2020) (citing *Hubbard v. Taylor (Hubbard I)*, 399 F.3d 150, 159-60 (2005)).

In assessing whether conditions and restrictions are excessive given their purposes, the courts must acknowledge that practical considerations of detention justify limitation on "many privileges and rights." *Bell*, 441 U.S. at 545–46. Though not a convicted prisoner, a pretrial detainee "simply does not possess the full range of freedoms of an unincarcerated individual." *Id.* at 546. As the Supreme Court cautioned in *Bell*:

> In determining whether restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion, courts must heed our warning that such considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to the expert judgment in such matters.

441 U.S. at 540 n.23. The deference to prison officials' judgment is especially strong in the context of an "unprecedented" situation like COVID-19, where "responsive measures [were] specifically implemented to detect and to prevent spread of the virus." *Hope*, 972 F.3d at 327 (concluding that conditions of confinement during COVID-19 did not amount to unconstitutional punishment); *McClain v. United States*, No. 21-4997 (SDW), 2021 WL 4820629, at *3–4 (D.N.J. Oct. 15, 2021) (dismissing without prejudice conditions-of-confinement claim by pretrial detainee where

8

"restrictions confining prisoners to their cells for the majority of their days and denying in person family visits during COVID-19-related lockdowns" were "rationally related to a legitimate purpose – controlling the threat of COVID-19").

Here, Plaintiff has not stated a claim that his detention in quarantine for six to seven days after testing positive for COVID-19 amounted to an unconstitutional punishment. The prison's decision to hold Plaintiff in quarantine following his testing positive for the virus does not amount to punishment considering the prison's interest in preventing the spread of the virus. *See Azcona v. Ellis*, No. 20-8526, 2021 WL 1139843, at *2 (D.N.J. Mar. 25, 2021) ("[T]he decision to place Plaintiff in a quarantine tier after he contracted COVID-19 does not amount to punishment in light of the obvious need to separate inmates with COVID-19 from other inmates to prevent further spread of the virus."); *see also Francisco v. White*, No. 1:20-1076, 2020 WL 4260766, at *3 (M.D. Pa. July 24, 2020) ("[T]he prison setting raises unique concerns regarding the spread of the COVID-19 virus since, by their very nature, prisons are confined spaces unsuited for social distancing."). Plaintiff complains that the conditions in quarantine prevented him from cleaning his cell and clothes and only allowed him out for thirty minutes. Plaintiff also argues Officers were not wearing masks. However, it is not clear how the Officers wearing masks would have helped Plaintiff after he had already tested positive for COVID-19. Furthermore, in *Hope*, the Third Circuit warned against making "ideal" conditions a "sine qua non of constitutional detention." 972 F.3d at 327.

The Third Circuit reiterated the "touchstone for the constitutionality of detention is whether conditions of confinement are meant to punish or are 'but an incident of some other legitimate governmental purpose.'" *Id.* at 326 (quoting *Hubbard II*, 538 F.3d at 232). Here, the facts do not indicate that Plaintiff was required to quarantine as punishment; rather, it appears to be a legitimate

9

response to a deadly pandemic, made in an effort to prevent the spread of the virus. Plaintiff has failed to state a claim that his detention in quarantine for six to seven days amounts to punishment. Therefore, this claim is dismissed without prejudice.

### C. Wellpath Medical Services

Plaintiff names Wellpath Medical Services as a Defendant in this matter. The United States Court of Appeals for the Third Circuit has explained that a private company, which is providing health services at a correctional facility, "cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003) (citing *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978)). Rather, in order for such a company to be held liable, the plaintiff must show that there was a relevant company policy or custom and that this policy or custom resulted in the asserted constitutional violations. *See id.* at 583-84 (citing *Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 404 (1997)). A policy "is a statement, ordinance, regulation, or decision officially adopted and promulgated by a government body's officers." *Blasi v. Borough of Pen Argyl*, No. 14-1354, 2015 WL 4486717, at *5 (E.D. Pa. July 23, 2015). A custom comprises "practices of state officials [which are] so permanent and well settled as to constitute a custom or usage with the force of law." *Glass v. City of Phila.*, 455 F. Supp. 2d 302, 341 (E.D. Pa. 2006) (cleaned up) (citing *Simmons v. City of Phila.*, 947 F.2d 1042, 1059 (3d Cir. 1991)).

Therefore, the question before the Court is whether Plaintiff's complaint has plausibly alleged that Wellpath had a policy or custom that resulted in a violation of his constitutional rights. Plaintiff names Wellpath as a defendant in this matter but fails to assert any of his allegations against any particular defendant. Further, while Plaintiff claims other inmates complained of the

lack of response in the medical kiosk, Plaintiff fails to allege any specific facts regarding those individuals. Plaintiff does not specify what medical conditions those inmates had, nor does he allege if or when they received treatment. More importantly, Plaintiff fails to allege facts to show who is responsible for answering medical kiosk forms. Plaintiff does not tie any of his allegations to a Wellpath policy or custom. Accordingly, the Complaint does not state a claim against Wellpath, and the claims against Wellpath are dismissed without prejudice.

### D.  Supervisor Liability Claim

Likewise, the Complaint fails to state a supervisor liability claim against Defendants Director of HCCC Oscar Aviles and Assistant Director of HCCC Thomas DeGise. Aside from alleging Defendants Aviles and DeGise are the Director and Assistant Director of HCCC and failed to protect Plaintiff from COVID-19, failed to provide proper treatment for COVID-19, and failed to prevent the spread of COVID-19, the Complaint makes no specific factual allegations regarding these Defendants (*See* ECF No. 1 at 4-5.)

"A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1987). A plaintiff may establish supervisory liability under § 1983 by showing: (1) liability based on an establishment of policies, practices, or customs that directly caused the constitutional violation; or (2) personal liability based on the supervisor participating in the violation of the plaintiff's rights, directing others to violate the plaintiff's rights, or having knowledge of and acquiescing to a subordinate's conduct. *Doe v. New Jersey Dep't of Corr.*, No. 14-5284, 2015 WL 3448233, at *9 (D.N.J. May 29, 2015). "Allegations of participation or actual knowledge and acquiescence . . . must be made with appropriate particularity." *Rode*, 845 F.2d at 1207. "Only those defendants whose inactions or actions personally caused [Plaintiff's]

injury may be held liable under § 1983." *Shaw by Strain v. Strackhouse*, 920 F.2d 1135, 1147 (3d Cir. 1990).

Here, the Complaint fails to allege that Aviles and DeGise were involved in establishing a policy, practice, or custom that caused Plaintiff's alleged conditions of confinement issues or medical treatment issues, nor does the Complaint allege any facts against Aviles and DeGise to show they participated in Plaintiff's issues, directed anyone to violate Plaintiff's rights, or had knowledge of and acquiesced to the conditions at HCCC. Aside from the bald assertions that these Defendants failed to protect Plaintiff from or treat Plaintiff for COVID-19, the Complaint does not contain sufficient factual matter against Defendants Aviles and DeGise. *See Twombly*, 550 U.S. at 555 (finding Plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action"). Accordingly, claims against Defendants Aviles and DeGise are dismissed without prejudice for failure to state a claim.

### IV. CONCLUSION

For the reasons stated above, the Complaint is **DISMISSED WITHOUT PREJUDICE** in its entirety pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A for failure to state a claim upon which relief may be granted. Because it is conceivable Plaintiff may be able to supplement his pleading with facts sufficient to overcome the deficiencies noted herein, Plaintiff is granted leave to move to re-open this case and to file an amended complaint. An appropriate order follows.

Dated: 9/29/22

                                                                  */s/ Brian R. Martinotti*
                                                               HON. BRIAN R. MARTINOTTI
                                                               UNITED STATES DISTRICT JUDGE